IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KIAH RANDLE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: |
| v. | : | |
| | : | **JURY DEMAND** |
| SHARKNINJA OPERATING, LLC, | : | |
| | : | |
| Defendant. | : | |

# COMPLAINT

Plaintiff, **KIAH RANDLE** (hereafter referred to as "Plaintiff"), by and through his undersigned counsel, **JOHNSON BECKER, PLLC** and **CONLEY GRIGGS PARTIN LLP**, hereby submits the following Complaint and Demand for Jury Trial against Defendant **SHARKNINJA OPERATING, LLC** (hereafter referred to as "Defendant SharkNinja" or "Defendant"), alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1. This is a product liability action seeking recovery for substantial personal injuries and damages suffered by Plaintiff after Plaintiff was seriously injured by a "Ninja Foodie" pressure cooker (hereafter generally referred to as "pressure cooker(s)")

1

2. Defendant SharkaNinja Operating, LLC manufactures, markets, imports, distributes and sell a wide-range of consumer products, including the subject "Ninja Foodie" pressure cooker at issue in this case.

3. On or about March 5, 2020, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid suddenly and unexpectedly exploding off the pressure cooker's pot during the normal, directed use of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff.

4. As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, wage loss, physical pain, mental anguish, and diminished enjoyment of life.

## THE PARTIES

5. Plaintiff was, at all relevant times, a resident of the City of McDonough, County of Henry, State of Georgia.

6. Defendant SharkNinja designs, manufacturers, markets, imports, distributes and sells a variety of consumer products, including the subject "Ninja Foodie" pressure cookers. Defendant SharkNinja is a Massachusetts Limited Liability Corporation incorporated in the State of Delaware and has a principal place of business located at 89 A St. # 100, Needham, MA 02494. Defendant

SharkNinja has a registered service address Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

7. At the time of Plaintiff's injuries on March 5, 2020, the sole member of SharkNinja Operating, LLC was EP Midco, LLC, a Massachusetts Limited Liability Company created and organized under the law of the State of Delaware and located at 89 A St. # 100, Needham, MA 02494.

8. At the time of Plaintiff's injuries on March 5, 2020, the sole member of EP Midco, LLC was Brian Lagarto.

9. Mr. Largato is a resident and citizen of the state of Massachusetts, and operates out of his principle places of business, 180 Wells Avenue, Suite 200, Newton, Massachusetts, 02459.

10. Accordingly, Defendant SharkNinja is a resident and citizen of the State of Massachusetts for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

13. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Georgia and intentionally availed itself of the markets within Georgia through the promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

14. Defendant SharkNinja is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cookers at issue in this litigation.

15. Defendant SharkNinja warrants, markets, advertises and sell its pressure cookers as a means to cook "easy" and "convenient" allowing consumers to "cook 70% faster than traditional cooking method[s]." [1]

16. Defendant SharkaNinja boasts that its pressure cookers have "14 safety features," [2] which purport to keep the user safe while cooking.

17. For example, according to the Owner's Manual accompanying the individual unit sold, the pressure cookers are equipped with a "safety feature" that prevents the lid from unlocking until "the unit is completely depressurized." [3]

---

[1] https://www.ninjakitchen.com/pressure-cookers/ (last accessed January 25, 2022)
[2] *Id*.

4

18. By reason of the forgoing acts or omissions, the above-named Plaintiff and/or her family purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

19. On or about March 5, 2020, Plaintiff was using the pressure cooker designed, manufactured, marketed, imported, distributed and sold by Defendant SharkNinja for its intended and reasonably foreseeable purpose of cooking.

20. While the pressure cooker was in use for cooking, the pressure cooker's lid unexpectedly and suddenly blew off the pot in an explosive manner. The contents of the pressure cooker were forcefully ejected out of the pot and onto Plaintiff, causing severe, disfiguring burns.

21. Plaintiff and her family used the pressure cooker for its intended purpose of preparing meals and did so in a manner that was reasonable and foreseeable by the Defendant SharkNinja.

22. However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by Defendant SharkNinja in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the

---

[3] Attached hereto as "Exhibit A" and incorporated by reference is the "Ninja Foodi 10-in-1 8 Qt XL Pressure Cooker OS400 Series" Owner's Manual. *See, e.g.* pgs. 15, 23.

product; placing the Plaintiff, her family, and similar consumers in danger while using the pressure cookers.

23. Defendant SharkNinja's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

24. Further, Defendant SharkNinja's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

25. Economic, safer alternative designs were available that could have prevented the pressure cooker's lid from being rotated and opened while pressurized.

26. As a direct and proximate result of Defendant SharkNinja's concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries.

27. Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendant SharkNinja's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries,

medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

## COUNT I
## STRICT LIABILITY

28. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

29. At the time of Plaintiff's injuries, Defendant's pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

30. Defendant's pressure cookers were in the same or substantially similar condition as when they left the possession of the Defendant.

31. Plaintiff did not misuse or materially alter the pressure cooker.

32. The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

33. Further, a reasonable person would conclude that the possibility and serious of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

    a. The pressure cookers designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of

     commerce in a defective and unreasonably dangerous condition for consumers;

  b. The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

  c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

  d. Defendant failed to warn and place adequate warnings and instructions on the pressure cookers;

  e. Defendant failed to adequately test the pressure cookers; and

  f. Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff' injuries and damages.

34. Defendant's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## NEGLIGENCE

35. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

36. Defendant had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

37. Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its pressure cookers in that Defendant knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

38. Defendant was negligent in the design, manufacture, advertising, warning, marketing and sale of its pressure cookers in that, among other things, they:

   a. Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

   b. Placed an unsafe product into the stream of commerce;

   c. Aggressively over-promoted and marketed its pressure cookers through television, social media, and other advertising outlets; and

   d. Were otherwise careless or negligent.

39. Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the Pressure cookers were still pressurized, Defendants continued to market (and continue to do so) its pressure cookers to the general public.

WHEREFORE, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III
## BREACH OF EXPRESS WARRANTY

40. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

41. Defendant expressly warranted that its pressure cookers were safe and effective to members of the consuming public, including Plaintiff. Moreover, Defendant expressly warranted that the lid of the Pressure Cooker could not be removed while the unit remained pressurized. For example:

   a. The pressure cookers are equipped with a "safety feature" that prevents the lid from unlocking until "the unit is completely depressurized.

42. Members of the consuming public, including consumers such as the Plaintiff were the intended third-party beneficiaries of the warranty.

43. Defendant marketed, promoted and sold its pressure cookers as a safe product, complete with "safety feature[s]."

44. Defendant's pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

10

45. Defendant breached its express warranties in one or more of the following ways:

    a. The pressure cookers as designed, manufactured, sold and/or supplied by the Defendant, were defectively designed and placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition;

    b. Defendant failed to warn and/or place adequate warnings and instructions on their pressure cookers;

    c. Defendant failed to adequately test its pressure cookers; and

    d. Defendant failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from their pressure cookers.

46. The Plaintiff in this case and/or her family purchased and used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

47. Plaintiff's injuries were the direct and proximate result of Defendant's breach of their express warranties.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

48. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

49. Defendant manufactured, supplied, and sold its pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently and safely.

50. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

51. Defendant's pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

52. The Plaintiff in this case reasonably relied on Defendant's representations that its pressure cookers were a quick, effective and safe means of cooking.

53. Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

54. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

55. At the time Defendant marketed, distributed and sold its pressure cookers to the Plaintiff in this case, Defendant warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

56. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

57. Defendant's' pressure cookers were not merchantable and fit for their ordinary purpose, because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

58. The Plaintiff in this case and/or her family purchased and used the pressure Cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

59. Defendant's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI
## <u>VIOLATION OF THE GEORGIA FAIR BUISNESS PRACTICES ACT</u>
## <u>O.C.G.A. § 10-1-390 *et. seq.*</u>

60.  Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

61.  The Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-372 *et. seq.*, was enacted to "protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce." O.C.G.A. § 10-1-390 (a).

62.  At all times material herein, Defendants warranted and represented that its pressure cookers were safe and free of defects in materials and workmanship and that they possessed certain "safety feature[s]".

63.  Defendant's warranties and representations that its pressure cookers were safe and free from defects, including that they possessed "safety features," would influence a reasonable consumer's decision whether to purchase the pressure cookers.

64.  Defendant's failure to warn of its pressure cookers defects was a material omission that would influence a reasonable consumer's decision whether to purchase its pressure cookers.

65. Plaintiff and/or her family relied on the truth of Defendant's warranties and representations concerning the pressure cookers, and Plaintiff suffered personal damages as result of this reliance.

66. Had Plaintiff and/or her family been adequately warned concerning the likelihood that the pressure cooker's lid could be removed while pressurized, they would have taken steps to avoid damages by not purchasing this product.

67. As a result of these violations of consumer protection laws, the Plaintiff in this case has incurred and will incur: serious physical injury, pain, suffering, loss of income, loss of opportunity, loss of family and social relationships, and medical and hospital expenses and other expense related to the diagnosis and treatment thereof, for which the Defendant is liable.

**WHEREFORE,** Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendants for damages, including punitive damages, to which he is entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

    a. judgment for Plaintiff and against Defendant;

b. damages to compensate Plaintiff for his injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant's pressure cookers;

c. pre and post judgment interest at the lawful rate;

d. a trial by jury on all issues of the case;

e. an award of attorneys' fees; and

f. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully submitted,

**CONLEY GRIGGS PARTIN, LLP**

Date: February 28, 2022     BY:    /s/ *Cale Conley*
CALE CONLEY
Georgia Bar No. 181080
4200 Northside Pkwy NW Bldg One
Suite 300
Atlanta, GA 30327
(404) 467-1155
cale@conleygriggs.com

*In association with:*

**JOHNSON BECKER, PLLC**

Michael K. Johnson, Esq.
 (MN ID #0258696)
*Pro Hac Vice to be filed*
Kenneth W. Pearson, Esq.
(MN ID #016088X)
*Pro Hac Vice to be filed*
Adam J. Kress, Esq.
(MN ID #0397289)
*Pro Hac Vice to be filed*

16

444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1800
mjohnson@johnsonbecker.com
kpearson@johnsonbecker.com
akress@johnsonbecker.com

***Attorneys for Plaintiff***

Case 1:22-cv-00841-JPB   Document 1   Filed 02/28/22   Page 18 of 18